## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MALINDA LITTLE<br>1104 Whittier Ave,<br>Bensalem PA 19020 | : <br> : <br> : <br> : | No. |
| *Plaintiff,* | : <br> : | JURY TRIAL DEMANDED |
| v. | : <br> : | CIVIL ACTION |
| LOWER BUCKS RESTORATION<br>SERVICES, INC., dba SERVPRO of<br>LEVITTOWN,<br>1430 C Manning Boulevard,<br>Levittown PA 19057 | : <br> : <br> : <br> : <br> : | |
| And | : <br> : | |
| WILLIAM J. KELLY. JR<br>1852 Jericho Drive,<br> Warrington PA 18976 | : <br> : <br> : | |
| *Defendants.* | : | |

### COMPLAINT

The above-captioned Plaintiff hereby complains as follows against Defendant, Lower Bucks Restoration Services Inc., doing business as Servpro of Levittown LLC.

### I.    Introduction

1.    Plaintiff, Malinda Little (hereinafter "Plaintiff") has initiated this instant action to recover damages for breach of her employment contract, for wrongful discharge following her complaints to William J Kelly, President of Defendant, Lower Bucks Restoration Services Inc. for his refusal to pay overtime and for his defamation of Plaintiff and interference with her prospective contractual relations by telling her prospective employers that she was a thief because she had unilaterally given herself a pay raise when, in fact, she had done no such thing.

1

## II.    Parties

2.    Plaintiff is an adult individual and citizen of Pennsylvania.

3.    Lower Bucks Restoration Services, Inc. does business as Servpro (hereinafter 'Servpro') and is a Pennsylvania corporation, incorporated in Pennsylvania in October 2012 and a franchisee of Servpro which serves customers in a proscribed geographical area in the Eastern District of Pennsylvania.

4.    William J Kelly Jr., (hereinafter referred to as 'Kelly') is acitizen of the Commonwealth of Pennsylvania and President of Lower Bucks Restoration Services, Inc., who resides in Bucks County at the address above.

## III.    Jurisdiction and Venue

5.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

6.    The Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

7.    Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(a)(1) and (c) because Defendants reside and are subject to personal jurisdiction in this judicial district and pursuant to 28 U.S.C. § 1391(a)(2) because the events giving rise to the claims set forth herein occurred in this judicial district.

8.    The United States District Court for the Eastern District of Pennsylvania may also exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331

and 1343(a)(4) because it arises under the laws of the United States and seeks redress, *inter alia*, for violations of the Fair Labor Standards Act.

## IV.    **Factual Background**

9.      The foregoing paragraphs are incorporated herein as if set forth in their entirety.

10.     Plaintiff was hired on July 24, 2013 to work as Servpro's Office Manager at a wage of $20 (dollars) per hour.

11.     In July 2015, Plaintiff became the Marketing Manager to help develop the marketing division for the franchise.

12.     She was paid $900 per week with commission.

13.     She was never compensated for overtime.

14.     She was only paid 5 hours of straight time, each week,  for manning the phones which was a total of 15.5 hours per night from 4:30 PM until 8 AM.

15.     If she missed a day or left early, she was docked that time and/or required to substitute a personal day.

16.     In September 2016, Plaintiff requested to move back into her position as Office Manager because her replacement was leaving.

17.     In this position also, Plaintiff was not paid her overtime when manning the phones.

18.     Phone duty was always at night and in excess of the 40 hours for which Plaintiff and others were never compensated.

19.     Once again, with this position, if Plaintiff was even an hour late or missed a day of work, Servpro docked her pay accordingly.

20.     On February 9, 2017, there was a snow day and the office was closed. Plaintiff was given the choice of having her pay docked or using a personal day.

21.     On March 1, 2017 Servpro required Plaintiff to punch in and out with a timecard, something she never had to do before.

22.     On March 14, 2017, there was another snow day and again, Plaintiff was informed that the office would be closed and therefore, she should not come into work.

23.     Once again she was told that she could either use a personal day or alternatively, that her pay would be docked for missing work.

24.     On March 21, 2017, Plaintiff told Kelly that Servpro was shorting her on her pay.

25.     Plaintiff requested clarification as to whether she was an exempt or nonexempt employee.

26.     Kelly responded that he had no idea what she was talking about.

27.     Plaintiff informed him that any hours over 40 were required to be paid at overtime rate.

28.     Kelly stated that he was giving employees an additional 5 hours for manning the phones.

29.     Plaintiff informed him that these hours were incorrect and, in any event, they were being paid at straight time not as overtime.

30.     On April 5, 2017, Kelly clarified that Plaintiff was an hourly employee.

31.     On April 6, 2017 Servpro took Plaintiff's pay of $1201.15 and divided it by 40 hours to determine Plaintiff's hourly rate, which was $30.30 an hour.

32.     For payroll purposes however, Plaintiff was paid 45 hours of straight time a week with 5 hours of 40 being added for manning the phones.

33.     This was how all Servpro's employees, who manned the phones, were paid.

34.     On April 10, 2017 Kelly questioned how Plaintiff had received more money in her paycheck.

35.     It was explained by Catrina Delima, the bookkeeper, how Plaintiff's pay was calculated.

36.     Kelly stated that Plaintiff's hourly rate was too high and should be based on her prior fixed salary per year and not divided by 40 hours for her hourly rate but divided instead by 45.

37.     Plaintiff had never heard, prior to the statement by Kelly that this had or should have been the calculation.

38.     Kelly then wrote up a sheet which showed Plaintiff's hourly rate at $26.69 per hour.

39.     This had been calculated by dividing her prior set weekly pay of $1201.15 by 45 hours.

40.     Plaintiff disagreed with this calculation.

41.     On April 12, 2017, Kelly ordered Catrina Delima to reduce Plaintiff's hourly rate to the $26.69 an hour.

42.     On April 17, 2017, Plaintiff once again complained to Kelly about the false calculation of her paycheck and her overtime.

43.     On April 19, Kelly warned Plaintiff that 'there were going to be a few changes."

44.     Kelly said he could not have employees giving themselves a raise, referring to Plaintiff.

45.     On April 22, 2017, Defendants deactivated Plaintiff's American Express card.

46.     Kelly stated, untruthfully, that there had been fraudulent activity on the card.

47.     On April 24th, 2017, Plaintiff was informed by Rick Schwenke and other employees that Kelly had pulled them into the office to tell them that it wasn't easy to fire Plaintiff.

48.     He informed them all that he was terminating Plaintiff's employment and they were not to come into the office until 9 AM the next day.

49.     He later messaged them and told them not to come in until 10 AM since Plaintiff was still in the office.

50.     April 25th, 2017, Plaintiff was informed by employees Dana Martorelli and Tiffani White that Kelly had sat with them in his office and told them that it can be a difficult time after firing someone but they would all work through the hump in the road and move on.

51.     Kelly also stated that he had spoken with some previous franchise owners who said that Plaintiff does an awesome job but is not to be trusted.

52.     Kelly said he was informed of this when he was looking to hire Plaintiff.

53.     He informed them that he had spoken with four other Servpro owners about the 'situation' and that they agreed that Plaintiff needed to be terminated.

54.     These franchise owners were informed that Plaintiff had given herself a raise without his knowledge and without authorization.

55.     He also requested a specific Servpro termination form from two of the franchise owners who stated that they did not have such a form.

56.     Kelly contacted these otherwise uninvolved, franchise owners to defame Plaintiff and tell them that she had stolen money and seemingly to 'request' how he should proceed when,

in reality, his motive was to defame Plaintiff and thereby limit the possibilities of her future employment.

57.     In that respect, he contacted Chuck Doyle, franchise owner of Servpro of Society Hill; Steve Lutz, franchise owner of Servpro of Warminster / Lansdale; Dan Plunket, franchise owner of Servpro of Penn-Del / SNJ / The Carolinas; Glenn Herrmann, franchise owner of Servpro of Newtown / Yardley and Mike Paparone, franchise owner of Servpro of Langhorne/Bensalem.

58.     Plaintiff was terminated on April 24, 2017 by Kelly who told her that Servpro was going "in a different direction."

59.     When Plaintiff asked Kelly what she had done to warrant termination, he claimed that Plaintiff had given herself a raise.

60.     Plaintiff explained that she had nothing of the sort.

61.     Plaintiff informed Kelly that it was Catrina Delima who had gone into the ADP software and made the calculation and changed Plaintiff's pay.

62.     Plaintiff told Kelly that he could go into ADP records to confirm that what she was saying was true.

63.     April 26th, 2017, Dana Martorelli and Tiffani White received a $200.00 taxed bonus in their paychecks from Defendants for, as Kelly put it "dealing with all the drama this week."

64.     On April 27th, 2017, Plaintiff received a phone call from an adjuster who had a potential fire job and wanted Servpro of Levittown to go out and take a look.

65.     Plaintiff referred the job to Jacob Wierzbicki ('Wierzbicki') who called Kelly and informed him of the potential job.

66.    Kelly was surprised that Plaintiff had given him a job lead and told Wierzbicki to offer Plaintiff her job back.

67.    Kelly told Wierzbicki he would characterize her 'week off', since her termination as an 'administrative suspension'.

68.    Wierzbicki told Plaintiff that Kelly realized he "had made a big mistake" by firing her.

69.    Plaintiff told Wierzbicki that she could not return given that she had been defamed by Kelly to Servpro's employees and to other Servpro Franchise owners.

70.    On April 28th, 2017, Kelly admitted to Dana Martorelli and Tiffani White that he should not have fired Plaintiff and regretted he had let his temper get the better of him.

71.    That afternoon, Plaintiff went to collect her final paycheck and noticed that she had not been compensated for 8 of her earned vacation days.

72.    When Plaintiff raised this issue, Kelly promised that Plaintiff would be compensated for on Friday, may 5th, 2017.

73.    On May 2, 2017, Glenn Herrmann, a former Servpro Owner and Plaintiff's old boss confirmed that Kelly had told him that Plaintiff had improperly gone to ADP and given herself a raise.

74.    On May 3, 2017, Kelly in discussion with Plaintiff, regarding her paid vacation time, reiterated that Plaintiff was shady and had, improperly, given herself a raise.

75.    Plaintiff responded that she had complained numerous times that he was not paying employees properly with respect to the extra 5 hours for phones.

76.    Defendant Kelly admitted his mistake and told her that he had changed and corrected this discrepancy a week or two before her firing.

77.     Plaintiff told him that he had only made this correction because she, and another employee, had complained to him yet again.

78.     At that point, while Plaintiff was in mid-sentence, Kelly hung up the phone.

## COUNT I
## PLAINTIFF v. SERVPRO - FLSA RETALIATION

79.     All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

80.     At all times, relevant herein, Plaintiff was an employee of Defendant

81.     By acting as aforesaid, Plaintiff engaged in protected activity under the FLSA.

82.     At all relevant times Servpro was aware of the protected activity.

83.     After Plaintiff engaged in the protected activity, Servpro took an adverse employment action against her, when it terminated her employment.

84.     After Plaintiff engaged in the protected activity and before Servpro terminated her employment, Servpro acted toward her in a hostile and antagonistic manner, as alleged above.

85.     There was a causal connection between Plaintiff's protected activity and Defendant's termination of her employment.

86.     Plaintiff's protected activity was a determinative or motivating factor in Servpro's decision to terminate her employment.

87.     By terminating Plaintiff's employment, Defendant acted in violation of the FLSA and in particular, 29 U.S.C.§ 205 (a) (3).

88.     At all relevant times, Servpro had no adequate policy or procedure to prevent retaliation against employees who engaged in protected activity under the FLSA.

89.     As a result of Defendant's retaliatory termination of Plaintiff's employment, Plaintiff has suffered, is suffering, and will suffer lost wages, earnings and benefits, as a result of

which Plaintiff is entitled to an award of back pay from the time of her termination until the date when an award or verdict is rendered in this case.

90.    As a further result of Defendant's retaliatory termination of Plaintiff's employment, Plaintiff is entitled to an award of front pay representing the amount of bonuses, wages, earnings and benefits she is expected to lose in the future, following the date when an award or verdict is rendered in this case.

91.    As a result of Defendants retaliatory termination of Plaintiff's employment, Plaintiff is entitled to a liquidated damages award in an amount equal to the wages, earnings and benefits she has lost and will lose as a result of Defendant's unlawful action.

92.    As a further result of Defendant's retaliatory termination of Plaintiff's employment Plaintiff has suffered, is suffering, and will suffer emotional distress, mental anguish, anxiety, stress, fear, and loss of self-esteem.

93.    As a further result of Defendant's willful and retaliatory termination of Plaintiff's employment, Plaintiff is entitled to an award of punitive damages to punish Defendant and to deter it from committing further acts of retaliation in violation of the FLSA.

94.    As a further result of Defendant's retaliatory termination of Plaintiff's employment, Plaintiff has incurred, is continuing to incur, and will incur attorneys' fees and costs.

95.    As a further result of Defendant's retaliatory termination of Plaintiff's employment, Plaintiff is entitled to an award of the difference between what Defendant paid her and the overtime pay to which she is entitled, from the inception of her employment until the termination of her employment.

WHEREFORE, Plaintiff requests the relief set forth below.

**COUNT II**
**PLAINTIFFv. DEFENDANTS**
**Pennsylvania Wage Payment and Collection Law ("WPCL")**

96.    The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

97.    At all times relevant herein,. Defendant was an "employer" as that term is defined in 43 P.S. § 260.2 a.

98.    Defendants were decision-makers, as that term is defined by the WPCL, who refused to pay Plaintiff her earned overtime wages as described above.

99.    Defendants refused to pay Plaintiff appropriate overtime, to which she was entitled.

100.    The monies owed to Plaintiff are "wages" as defined by the WPCL.

101.    Defendants' willful and deliberate failure to pay Plaintiff the aforesaid wages is a violation of the WPCL.

102.    Because Defendants failure to pay Plaintiff was in bad faith, Plaintiff is also entitled to claim a percentage of the total monies due to her, or the prescribed statutory amount (whichever is greater) as liquidated damages at a rate set forth in the WPCL.

103.    Further, Defendants are responsible for all attorneys' fees expended by Plaintiff in her efforts to recover the monies properly due.

**COUNT III**
**PLAINTIFF v.KELLY**
**Defamation**

104.    The averments of the foregoing paragraphs are hereby incorporated by reference

11

as if set forth fully herein.as if set forth fully herein.

105.    The statements, referenced above, made by Kelly to the other employees of Servpro and also to other franchisees characterizing Plaintiff as a thief, are defamatory as a matter of law.

106.    The statements were made in reckless disregard of the truth.

107.    The statements were made maliciously to harm Plaintiff's reputation.

108.    Plaintiff has suffered damages as a result of said statements.

109.    As a result of Defendant's reckless, deliberate, willful and wanton tortious acts Plaintiff was subjected to both public and private ridicule, shame, and humiliation, loss of contractual relations, loss of employment, loss of earnings and additional monetary damages, and great mental anguish that she will continue to endure for an indefinite time in the future, all to her great detriment and loss.

WHEREFORE, Plaintiff requests the relief set forth below.

**COUNT IV**
**PLAINTIFF v. DEFENDANTS**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**

110.    The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

111.    Plaintiff had the right to pursue her employment opportunities free from interference on the part of other persons except where such interference was justified or constituted the exercise of an absolute right.

112.    Plaintiff was employed Servpro, as stated.

113.     Servpro, through the agency of its franchise owner, Kelly acted maliciously, through defamation, to interfere with Plaintiff's perspective employment opportunities.

114.     Kelly, under the guise of 'getting advice' on how to address the issue of Plaintiff's action in allegedly giving herself a raise, an issue which itself was entirely fabricated by Defendants, contacted all of Plaintiff's prospective employees i.e.; other franchisees of Servpro in other proximate geographical areas.

115.     In doing so, Defendants maliciously maligned Plaintiff's reputation, imputing to her, the crime of theft and ensuring thereby, that no other franchisee would hire her.

116.     The clear motive, to destroy any prospective contractual relations Plaintiff might have with any other Servpro franchisee, became obvious when, having terminated Plaintiff from her employment, Kelly indirectly contacted her a week later, to offer her, her job back.

117.     Meanwhile, just prior to her termination from Servpro's employ, Kelly had insured that when he terminated her from her employment, she would not be hired elsewhere by another Servpro franchisee despite the fact that she had been excellent at her job and was both skilled and knowledgeable in the business.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in his favor and against each Defendant for the following relief:

a.   Relief sought for each Count referenced herein;

b.   Compensatory damages as available as a matter of law;

c.   Injunctive and declaratory relief as available as a matter of law;

d.   Liquidated damages as available as a matter of law;

e.   Punitive damages as available as a matter of law;

f.  Costs, disbursements and attorneys' fees' as available as a matter of law;

g.  Declaring the acts and practices complained of herein to be in violation of the FLSA;

h.  Entering a judgment in favor of the Plaintiff and against the Defendants;

i.  Awarding back pay to the Plaintiff to compensate her for past lost wages, earnings and benefits resulting from Defendant's violation of the FLSA;

j.  Awarding front pay to the Plaintiff to compensate her for future lost wages, earnings and benefits resulting from Servpro is a violation of the FLSA;

k.  Awarding pre-judgment interest to the Plaintiff and

l.  Such other and further relief as this Court deems just and proper.


Respectfully submitted,

KOLMAN ELY, P.C.

/s/ Timothy M. Kolman
Timothy M. Kolman, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138



Dated: August 2, 2017