# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALINDA LITTLE, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| | : | 2:17-cv-03446-AB |
| LOWER BUCKS | : | |
| RESTORATION SERVICES, | : | |
| INC., *et al.*, | : | |
|     Defendants. | : | |

**February 25th, 2019**　　　　　　　　　　　　　　　　　　　　　　　　　　**Anita B. Brody, J.**

## **MEMORANDUM**

Defendant Lower Bucks Restoration Services, Inc., ("LBRS") is a fire and water cleanup and restoration services provider that does business as Servpro of Levittown. Defendant William J. Kelly, Jr., ("Kelly") is a corporate shareholder of Servpro and the President of LBRS. Plaintiff Malinda Little, a former LBRS employee, brings this action against LBRS and Kelly.

Little asserts a claim for intentional interference with prospective contractual relations ("IIPCR") and a claim under the Pennsylvania Wage Payment and Collection Law ("WPCL") against LBRS and Kelly. Little asserts a claim under the anti-retaliation provision of the Fair Labor Standards Act ("FLSA") against LBRS. Little brings a common law claim for defamation against Kelly.

Defendants move for summary judgment on Little's FLSA, WPCL, and IIPCR claims.[1] I will grant Defendants' motion as to Little's IIPCR claim. I will deny Defendants' motion as to Little's FLSA claim and WPCL claim.[2]

---

[1] Kelly has not moved for summary judgment on Little's defamation claim.

[2] The Parties argue extensively about whether Little may recover pre-termination overtime wages as damages for her FLSA retaliation claim. Because deciding this question would not dispose of

1

## I. BACKGROUND

In July 2013, Little began to work for LBRS as an Office Manager. *See* Deposition of Malinda Little ("Little Dep.") at 40:24-41:3. In July 2015, Little transitioned to a position as Marketing Manager. *See id.* at 66:14-67:15. On March 17, 2016, Little voluntarily left her employment at LBRS. *Id.* at 98:21-99:3. In September 2016, Little returned to LBRS as Office Manager. *Id.* at 111:19-24. As Office Manager, Little's job duties involved scheduling appointments, confirming appointments, creating files, writing job estimates, and other similar responsibilities. Pl.'s Statement of Facts ¶ 4.

In addition to these duties as Office Manager, Little, along with other employees, also worked after-hours "on-call shifts" during which she was required to field business-related calls via cell phone after the office had closed. *Id.* ¶¶ 63, 81-84. This arrangement was consistent with the job description for LBRS Office Manager, which characterized the position as requiring her to be flexible to work overtime. *Id.* ¶ 76-78. Little and other employees were only compensated for five hours of additional work per shift regardless of the amount of time they were on call. *See id.* ¶ 64 (citing Little Dep. at 164:3-12), ¶ 81 (citing Deposition of William Kelly, Jr. ("Kelly Dep.") at 18:5-19:7).

Little complained to Kelly about this compensation scheme for on-call shifts. *See, e.g.*, *id.* ¶¶ 97, 100 (Little's colleagues' testimony that other employees including Little had complained about on-call pay). In or around March 2017, in relation to her complaints about

---

all or part of a "claim or defense," Fed. R. Civ. P. 56(a), it is not subject to disposition on summary judgment. *See Collins v. Cottrell Contracting Corp.*, 733 F. Supp. 2d 690, 698 (E.D.N.C. 2010) ("[A] motion for summary judgment may not properly seek to dispose of only a factual allegation or element of a single indivisible claim for relief."); *N.J. Auto. Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 396 (D.N.J. 1998). For this reason, I do not address this question at this stage.

overtime pay, Little requested clarification as to her employment status (specifically, whether she was an hourly or salaried employee). *See id.* ¶ 72 (citing Ans. ¶¶ 21-25).

In March 2017, LBRS moved Little to an hourly position. *See* Defs.' Br. at 6 (citing Delima Aff. ¶ 6). After this change to hourly pay, LBRS, Kelly and Little continued to dispute the appropriate hourly rate of pay in her new position, leading to a "hostile environment." *See, e.g.*, Defs.' Br. at 27 (quoting Little Dep. at 135:1-12). On April 28, 2017, LBRS allegedly terminated Little's employment because she had taken her Non-Compete Agreement from the company's files without permission and because she was regularly late to work, among other stated reasons. *See* Defs.' Br. at 8 (citing Wierzbicki Aff. ¶ 13).

Before terminating Little, Kelly had contacted local competitors "seeking advice" about dealing with Little's employment situation. *See* Defs.' Reply at 10; Defs.' Br. at 3. Little had a long history of working for organizations in LBRS's industry and expected to find work in the local industry (including for the local competitors Kelly contacted) after her termination. Pl.'s Statement of Facts ¶ 101. However, Little has no knowledge of a specific job opportunity that she was denied because of Kelly's contacts with other Servpro businesses about her employment situation. *See* Little Dep. at 199:8-20.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from

3

the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III. DISCUSSION

I will grant Defendants' Motion for Summary Judgment on Little's claim for intentional interference with prospective contractual relations. I will deny Defendants' Motion for

4

Summary Judgment on Little's other claims that include a cause of action based on FLSA retaliation and a cause of action based on the WPCL.

### A. Fair Labor Standards Act Retaliation Claim against LBRS[3]

Section 15(a)(3) of the FLSA prohibits an employer from retaliating against an employee for asserting grievances about the employee's rights under the Act:

> it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . .

29 U.S.C. § 215(a)(3). A *prima facie* case of FLSA retaliation consists of the same elements as retaliation under Title VII: "a plaintiff must show that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against [her], and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action." *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 499 (W.D. Pa. 2013) (quoting *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x. 936, 939 (3d Cir. 2003)).

LBRS argues that Little's claim for retaliation fails in two ways. First, LBRS maintains that Little has failed to show that she engaged in protected activity because she did not "file[]

---

[3] Little's Complaint asserts a claim captioned "COUNT I, PLAINTIFF v. [LBRS] – FLSA RETALIATION." *See* Compl. at 9. The paragraphs under this heading cite the FLSA anti-retaliation provision, 29 U.S.C. § 2[1]5(a)(3), but no other FLSA provision. *See id.* ¶ 87. The paragraphs under this heading also plead facts that align directly with the pleading requirements for an FLSA retaliation claim. *See id.* ¶¶ 79-94.

Although in her briefing Little characterizes Count I of her Complaint as "Count I of the Complaint (FLSA Overtime)," *see* Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 3, Little's Complaint does not cite, mention, or allude to 29 U.S.C. § 207(a)(1), the statutory provision that creates a cause of action for FLSA overtime. Little's Complaint similarly fails to plead facts tailored to the elements of a claim for FLSA overtime. *Cf. Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 238–40 (3d Cir. 2014) (discussing pleading requirements for an FLSA overtime cause of action brought pursuant to 29 U.S.C. § 207(a)(1)).

5

any complaint" as required by 29 U.S.C. § 215(a)(3). Second, LBRS contends that Little has failed to show a causal link between her complaints and LBRS's termination of her employment.

### 1. Little's FLSA Complaint

LBRS argues that Little did not engage in protected activity because she did not "file any complaint" about her overtime pay within the meaning of 29 U.S.C. § 215(a)(3). Little, however, has put forward enough evidence to create a genuine dispute of fact as to whether her alleged grievances amount to "protected activity" under the FLSA. Less formal oral complaints like Little's may amount to a "filing" under this provision because although "the phrase 'filed any complaint' contemplates some degree of formality," it suffices to show that, after receiving the complaint, the "recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). Specifically, a "complaint" must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.*

Little has put forward evidence that, in late March 2017, she complained to LBRS about her overtime pay and that LBRS responded to her pay inquiries by changing her employment status and pay structure. A dispute of material fact therefore exists as to whether Little's complaints were sufficiently formal that LBRS had "been given fair notice that a grievance has been lodged and [did], or should [have], reasonably [understood] the matter as part of its business concerns." *Id.*[4]

---

[4] Defendants also object that Little could not have "filed any complaint" about her overtime because Little was not actually entitled to overtime. This objection is unavailing because Little need not show that her FLSA complaint was meritorious. *See Brock v. Richardson*, 812 F.2d

## 2. Causal Link between Little's Complaints and Little's Termination

Little has similarly put forward enough evidence to create a genuine dispute of material fact as to the causal link between her complaints and her firing. To demonstrate a "causal link" in relation to a retaliation claim, the Third Circuit permits plaintiffs to rely on a "broad array of evidence." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 283–84 (3d Cir. 2000). In considering this evidence, district courts should focus "on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) (citing *Farrell*, 206 F.3d at 281).

Little was terminated roughly five weeks after complaining about her overtime pay and inquiring about her related employment status. Little has also put forward evidence of "ongoing antagonism" between her and her employer: between filing her complaint and being terminated, Little had an ongoing dispute with LBRS about her hourly pay which resulted in an antagonistic and hostile work environment. This evidence satisfies Little's burden at this stage to show that there was a causal link between her complaint and her termination.

### B. Pennsylvania Wage Payment and Collection Law Claim

The WPCL provides that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his [or her] employe[e]s on regular paydays designated in advance by the employer." 43 Pa. Cons. Stat. § 260.3(a). Pennsylvania enacted the WPCL:

> to provide a vehicle for employees to enforce payment of their wages and compensation held by their employers. The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The WPCL does not create an employee's substantive right to

---

121, 125 (3d Cir. 1987) (An employee may recover for FLSA retaliation even if the employee was discharged "in the mistaken belief that the employee ha[d] engaged in protected activity.").

7

compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled *by the terms of an agreement.*

*Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. Ct. 2000) (emphasis added). Under the WPCL, therefore, a plaintiff is only entitled to recover wages that are due to her by the terms of an agreement. *Id.* Such a contractual obligation may stem from the employment contract or from a less formal implied contractual obligation. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (holding that a plaintiff may make out a WPCL claim by establishing "the formation of an implied oral contract between [the employer] and its employees"); *see also Braun v. Wal-Mart Stores*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011) ("[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer.").

Defendants argue that Little's claim under the WPCL should be dismissed because Little has not shown that she was contractually entitled to the wages she claims as relief. However, Little has put forward enough evidence to create a factual dispute as to whether Defendants had created an implied contractual obligation to pay Little overtime wages. Specifically, Little's job description included a requirement that Little be flexible to work overtime when required. LBRS also had a standing arrangement with employees to give the employees additional compensation for their overtime work. These facts create a genuine dispute as to whether LBRS and Little had an implied contract for LBRS to pay Little all necessary wages for her overtime work.

### C. Intentional Interference with Prospective Contractual Relations Claim

Little also seeks to recover for intentional interference with prospective contractual relations. Little claims that Kelly intentionally interfered with her ability to enter employment

relationships with other local businesses. Defendants counter that Little has failed to put forward enough evidence to defeat summary judgment on this cause of action.

Under Pennsylvania law, to make out a claim for intentional interference with prospective contractual relations, Little must prove four elements: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979).

The Pennsylvania Supreme Court has indicated that a "prospective contractual relation" is "something less than a contractual right, something more than a mere hope . . . . This is an objective standard which of course must be supplied by adequate proof." *Id.* (quotation marks omitted); *see also Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1392 (3d Cir. 1991). In determining whether there is a prospective contractual relationship, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively "reasonable likelihood or probability" that the contemplated contract would have materialized absent the defendant's interference. *Glenn v. Point Park Coll.*, 272 A.2d 895, 898–99 (Pa. 1971); *see also Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997).

Little fails to show that she had anything more than a mere hope of entering an employment relationship with the individuals that Kelly contacted. She cannot point to a specific job opportunity with which Kelly interfered. Instead, Little relies only on her assertion that she had a long history of working for Servpro franchises like LBRS. This showing fails to indicate that there was a reasonable likelihood or probability that Little would have entered into an employment contract with another company if not for Kelly's interference. *See, e.g.*, *Acumed*

*LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 213 (3d Cir. 2009) (citing *Phillips v. Selig*, 959 A.2d 420, 428 (Pa. Super. Ct. 2008) ("[A] plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship."). I will therefore grant Defendants' motion on Little's claim for intentional interference with prospective contractual relations.

## IV. CONCLUSION

I will grant Defendants' Motion for Summary Judgment on Little's claim against LBRS and Kelly for intentional interference with prospective contractual relations.

I will deny Defendants' Motion for Summary Judgment on Little's other claims. There are outstanding genuine disputes of material fact as to: (1) Little's defamation claim against Kelly; (2) Little's FLSA retaliation claim against LBRS; and (3) Little's WPCL claim against Kelly and LBRS.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on 2/26/2019

10